UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-593-H

HALBERT JENNINGS                                                                                                    PLAINTIFF

V.

D.F. CRANE CONSTRUCTION CORP., et al.                               DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This is an unusual case under the Employee Retirement Income Security Program ("ERISA") in which a former employee, Halbert Jennings ("Jennings"), has sued his employer, D.F. Crane Construction Corp. ("Crane") and its ERISA Policy (the "Policy") medical benefits insurer, MedBen, to recover medical benefits originally paid to his health care providers. Both sides have now moved for judgment in their favor. The Court asked the parties to provide additional discovery.

The Court has reviewed the unique circumstances in some detail, but has yet to reach a definitive conclusion. The accompanying order requests the parties to address the issue of timely notice of COBRA rights.

I.

Jennings began working at Crane in July 2003. According to him, he worked mostly on weekends. Crane provided a system of employee welfare benefits, governed by ERISA, to eligible employees, which included medical care benefits (the "Policy"). Crane paid one-half of the insurance premium and eligible employees, such as Jennings, paid the other half.

Under the Policy, an "Eligible Employee means a person employed full-time, at least 30 hours or more per week at his or her employer's regular place of business or at some other place to which his or her employer requires such person to travel." In relevant part, the Policy provides that coverage terminates "on the end of the day before the date" on which the eligible employee no longer meets eligibility requirements. The Policy also recognizes that eligible employees may be entitled to continue their medical benefits pursuant to the Consolidated Omnibus Reconciliation Act ("COBRA"). Termination of employment and/or a reduction of hours are qualifying events under the Policy that entitle an eligible employee to elect continuation coverage under COBRA.

A brief review of Jennings' work and pay records reveals that he worked less than the required thirty (30) hours in five (5) of the remaining weeks of 2003, and in sixteen (16) weeks during 2004. On January 11, 2005, after four weeks of working less than 30 hours, Jennings was laid off by Crane. During this time Crane continued to pay his medical premiums and, therefore, Jennings retained his company health insurance. Jennings returned to work the week of March 27, 2005, and then worked an additional seven weeks, during only two of which did his hours reach thirty (30). At no time did Crane notify MedBen or Jennings that Jennings was ineligible for health insurance. During the entire time Jennings received Policy coverage.

On May 13, 2005, Jennings asked whether he was needed for work during the upcoming weekend. After being told that he was not needed, the following day Jennings was hospitalized for an elective medical procedure. Apparently the operation did not go as smoothly as anticipated. Jennings called Crane and advised them that he was unable to work the following weekend, May 20-21. Throughout May and June Jennings remained unable to work, but

2

maintained contact with his supervisor while continuing his medical recuperation. Between May 13 and June 2, Jennings incurred medical bills of about $46,000, which MedBen paid. The last check in the amount of $43,946 was paid sometime in the middle of July.

On July 1, Jennings called Crane and advised it that he would be able to return to work soon. In turn, Crane advised him that his project was finished and that his services were no longer needed. Thus, the record fairly establishes that Crane did not terminate Jennings' employment until on or about July 1, though none of Crane's files document it. Consequently, on July 11, Jennings found other employment and secured health benefits with that employer. At this point, MedBen had paid all of the medical bills and Jennings had no reason to believe that his coverage or the liability for those expenses was in question.

On July 26, 2005, Crane wrote a letter to MedBen advising it that Jennings should be deleted from Crane's medical benefits account as of May 11, 2005. The letter stated that Jennings was "terminated" as of that date. On or about July 29, 2005, MedBen sought and received reimbursement from various health care providers for the amounts previously paid to it for Jennings' care.

Subsequently, on August 8 MedBen advised Jennings that his coverage ended as of May 11, 2005, "due to [his] Termination." He was advised that he could elect coverage under COBRA to extend his insurance from May 11 through November 11. All of this apparently came as some surprise to Jennings who wrote back disputing that Crane had ever terminated him as of May 11. The parties argued back and forth about whether his coverage ended on May 11. Now those health care providers have sought to collect the cost of that medical care from Jennings.

The record establishes that Jennings understood that health insurance was cancelled and that he was entitled to COBRA coverage by paying past due premiums. By September, Jennings was also aware that MedBen was now denying coverage for his medical care during May, June and July. Jennings believed this was unfair because Crane never terminated him prior to July 11 and never notified him that his benefits were retroactively terminated until August.

## II.

At the heart of this case appears to be the confusion that ensued because of the time line of events. Particularly relevant is the fact that Crane delayed several months before informing MedBen about Jennings' ineligibility under the Plan. During that time, Jennings had received medical services and MedBen paid for those services. The failure to provide timely notice may have consequences under ERISA. The Court discusses its current understanding as follows.

### A.

The COBRA amendments to ERISA require employers to notify the plan administrator of "qualifying events" in a timely manner. *See* 29 U.S.C.A. § 1166(a)(2). Under a single employer plan, such notice must be given within 30 days of the "qualifying event." *Id.* After receiving such notice, the administrator has 14 days to notify the beneficiary. 29 U.S.C.A. § 1166(c).[1] A beneficiary must be notified of his or her COBRA within 44 days of a qualifying event. Termination, or reduction of employee's hours, is a "qualifying event." 29 U.S.C.A. § 1163(2); *see also* Certificate of Coverage § 18.1(4)(a). Any employee benefit plan other than a multiemployer plan is termed a single employer plan. 29 U.S.C.A. § 1002(41). A

---

[1] "When the employer and the plan administrator are the same entity, the employer has forty-four (44) days from the date of the qualifying event to notify qualified beneficiaries of the right to maintain coverage." *Rodriguez v. International College of Business & Tech., Inc.*, 364 F. Supp. 2d 40, 45 (D.P.R. 2005) (citing *Gonzalez Villanueva*, 339 F.Supp.2d at 358-59).

4

multiemployer plan is maintained pursuant to one or more collective bargaining agreement and to which more than one employer is required to contribute. 29 U.S.C.A. § 1002(37)(A); *see also Plumbers & Pipefitters Local Union No. 572 Health & Welfare Fund v. A&H Mechanical Contractors, Inc.*, 100 Fed. Appx. 396, 398 (6th Cir. 2004); *Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 456 (6th Cir. 1989).

This is a single employer plan, even though the Policy was purchased through a trust. The trust is an agreement amongst multiple employers to join together to exercise group power in getting an insurance policy. At no time did the employees negotiate with multiple employers. Since the Policy is not the result of negotiations between the employees and multiple employers, this is not a multiemployer plan. *See* James F. Jorden, Waldemer J. Pflepsen, Jr., and Stephen H. Goldbery, Handbook on ERISA Litigation § 8.01 (3d ed. 2009). Thus, the 30 day notification requirement applies here.

ERISA gives beneficiaries the right to bring a civil action to enforce their rights under the statute and the plan. 29 U.S.C.A. § 1132(a). When a group health plan administrator fails to provide the requisite COBRA notices, a court may in its discretion award a statutory penalty from the date of the failure until the date of correction. 29 U.S.C.A. § 1132(c)(1). Failure to provide notice of COBRA rights to the qualified beneficiary may also require the administrator to provide coverage to the qualified beneficiary. *McDowell v. Krawchison*, 125 F.3d 954, 957 (6th Cir. 1997) (quoting *Lincoln Gen. Hosp. v. Blue Cross/Blue Shield*, 963 F.2d 1136, 1139 (8th Cir. 1992)).

B.

Since this is a single-employer plan, the administrator must be notified within 30 days of

a qualifying event, and the beneficiary within 44 days.  Crane identified the qualifying event, a reduction in hours, as occurring on May 11, 2005.  Crane informed MedBen on Jul 26th.  Jennings did not receive COBRA notification until August 8, 2005.  Quite clearly no one informed Jennings of his COBRA rights within 44 days of the date on which Crane claims the qualifying event occurred, thereby ending his policy coverage.

Remaining is the question of which party has responsibility for the notification.  The notification requirements anticipate that the plan administrator will notify the beneficiary.  ERISA defines the plan administrator as the person so designated by the plan.  29 U.S.C.A. § 1002(16)(A). The plan administrator "provid[es] participants with copies of plan documents, plan summaries, and other prescribed information and provid[es] COBRA notices to beneficiaries." Handbook on ERISA Litigation § 4.02(B)(2)(b).  Employers who control administration of a plan can be plan administrators.  *See Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988).  To control administration of the plan, the employer must "participat[e] in the decision-making process concerning the granting, denying, or termination of benefits." *Id.*

The Policy names Crane as the plan administrator, but there is no evidence that Crane actually controlled the policy.  Crane purports only to perform ministerial tasks, such as disseminating employee application forms and paying monthly premiums.  MedBen processes and pays all claims for medical benefits.  MedBen also informed Jennings that his coverage had been terminated and advised him of his rights to continuation coverage pursuant to COBRA, thereby assuming the responsibilities of notifying and advising Jennings of his rights under COBRA.  MedBen did this, however, only after receiving delayed notice from Crane regarding Jennings's status.  MedBen then notified Jennings of his COBRA rights within 14 days of

receiving notification from Crane. Seemingly, MedBen acted as the plan administrator for purposes of COBRA notification. Yet, even though Crane may not have been acting as the plan administrator, Crane's delay is the clear root of the ensuing confusion. That delay also caused the failure to satisfy ERISA's notification requirements.

Since MedBen functioned as the plan administrator for purposes of COBRA notification, Crane had a duty to notify MedBen of qualifying events within 30 days of those events occurring. Crane did not notify MedBen of the change in Jennings's eligibility status until almost three months after Jennings's eligibility status changed. Although MedBen informed Jennings of his right to COBRA coverage just within 14 days of receiving notification of the qualifying event from Crane, Jennings had not received notification of his rights to COBRA coverage within the statutory 44 day window for notification.

C.

The parties have not briefed the issue of COBRA notification and the consequences of failing to provide it in a timely fashion. Absent the problems discussed here related to Crane's notice or the availability of a remedy arising from it, Crane and MedBen would appear to be entitled to judgment in their favor.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants MedBen and Crane's motions to dismiss are DENIED at this time.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment is also DENIED at this time.

IT IS FURTHER ORDERED that on or before **April 27, 2009**, the parties shall submit

briefs on the effect of the failure to provide proper notification pursuant to 29 U.S.C.A. § 1166. Thereafter, the Court shall reconsider the pending motions.

cc: Counsel of Record