UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-593-H

HALBERT JENNINGS                                                              PLAINTIFF

V.

D.F. CRANE CONSTRUCTION CORP., et al.                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

    Halbert Jennings ("Jennings") sued his employer, D.F. Crane Construction Corp. ("Crane") and its ERISA Policy (the "Policy") medical benefits insurer, MedBen, to recover medical benefits originally paid to his health care providers. Both sides moved for judgment in their favor. There are many quite unusual factual aspects of this case. Consequently, the Court asked the parties to provide additional discovery and further advice regarding Jennings' rights under ERISA and the Consolidated Omnibus Reconciliation Act ("COBRA"). Having received this information from the parties, the Court now believes that it can clarify the issues. It is fair to say that the Court's view of the relevant questions at issue is somewhat different than either of the parties. Nevertheless, as the following memorandum explains, Jennings is entitled to a remedy under ERISA in these circumstances.

I.

    The Court previously outlined the facts of the case in its opinion dated, April 10, 2009. A brief review of the relevant facts follows.

    Jennings began working at Crane in July 2003. Crane provided a system of employee

welfare benefits, governed by ERISA, to eligible employees, which included medical care benefits (the "Policy"). Crane paid one-half of the insurance premium and eligible employees, such as Jennings, paid the other half. Under the Policy, an "Eligible Employee means a person employed full-time, at least 30 hours or more per week at his or her employer's regular place of business or at some other place to which his or her employer requires such person to travel." Coverage under the policy terminates "on the end of the day before the date" on which the employee no longer meets eligibility requirements. After coverage termination, eligible employees may be entitled to continue their medical benefits pursuant to COBRA. Termination of employment and/or a reduction of hours are qualifying events under the Policy that entitle an eligible employee to elect continuation coverage under COBRA.

On May 13, 2005, Jennings asked whether he was needed for work during the upcoming weekend. After being told that he was not needed, the following day Jennings underwent an elective medical procedure, which resulted in unforseen consequences. As a result, Jennings could not work throughout May and June. He maintained contact with his supervisor at Crane while recovering from the surgery. Between May 13 and June 2, Jennings incurred medical bills of about $46,000, which MedBen paid.

On July 1, Jennings called Crane and said he would be able to return to work soon. In turn, Crane advised him that the project he had worked on was finished and that his services were no longer needed. Thus, the record fairly establishes that Crane did not terminate Jennings' employment until on or about July 1, though none of Crane's files document it. Consequently, on July 11, Jennings found other employment and secured health benefits with that employer. At this point, MedBen had paid all of the medical bills and Jennings had no reason to believe that

his coverage or the liability for those expenses was in question.

On July 26, 2005, Crane wrote a letter to MedBen advising it that Jennings should be deleted from Crane's medical benefits account as of May 11, 2005. The letter stated that Jennings was "terminated" as of that date. On or about July 29, 2005, MedBen sought and received reimbursement from various health care providers for the amounts previously paid to it for Jennings' care.

Subsequently, on August 8, 2005 MedBen provided Jennings the ERISA required notice terminating his coverage as of May 11, 2005, "due to [his] Termination." He was advised that he could elect coverage under COBRA to extend his insurance from May 11 through November 11. All of this apparently came as some surprise to Jennings who wrote back disputing that Crane had ever terminated him as of May 11. The parties argued back and forth about whether his coverage ended on May 11. Now those health care providers have sought to collect the cost of that medical care from Jennings.

The record establishes that Jennings understood that health insurance was cancelled and that he was entitled to COBRA coverage by paying past due premiums. By September, Jennings was also aware that MedBen was now denying coverage for his medical care during May, June and July. Jennings believed this was unfair because Crane never terminated him prior to July 1 and never notified him that his benefits were retroactively terminated until August. In any event, Jennings never availed himself of any existing rights under COBRA. The Court must determine the legal consequences of all these actions and misunderstandings.

II.

Both Crane and MedBen argue that Jennings cannot assert a claim under COBRA.

3

Under the terms of the Policy, eligible employees could elect COBRA coverage, and Jennings had the right to receive COBRA notification in a timely manner. The purpose of COBRA is to allow ERISA participants the opportunity to continue their benefits where a company has legitimately terminated them. These contentions are both undeniable and irrelevant here. Jennings did not exercise his right to receive COBRA benefits, has not pursued a remedy which would permit him to make such an election now, and has not pursued any other claim for relief under COBRA.

Jennings has made certain claims under ERISA. Specifically, Jennings brings his claim under 29 U.S.C. 1132(a)(1)(B) which authorizes an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The Court must determine whether either Crane or MedBen have denied Jennings any of his rightful ERISA plan benefits in these circumstances.

COBRA requires an employer to notify the plan administrator within thirty (30) days of a qualifying event. The plan administrator then has 14 days after learning of the qualifying event to notify the beneficiary. 29 U.S.C. § 1166(c). When the employer is also the administrator of the plan, the administrator must provided notice within 44 days. 29 C.F.R. § 2590.606-4(b)(2). Crane does not dispute that it is the employer and the plan administrator. Crane did not notify Jennings until August 8, 2005, or some 76 days after the qualifying event and 32 days after the required statutory notice. Thus, Crane, as the administrator violated its duty to provide the appropriate notice to Jennings.

The question presented is whether this delay has any legal consequences which this Court has the power to address under ERISA. While the parties have not submitted, and the Court has

4

not found, any cases directly on point, the Court has found several cases analogous to our case that suggest the proper result. The Sixth Circuit has said that where an administrator fails to provide notice of COBRA rights, a beneficiary may be entitled to coverage under the ERISA medical plan coverage. *McDowell v. Krawchison*, 125 F.3d 954, 957 (6th Cir. 1997) (quoting *Lincoln Gen. Hosp. v. Blue Cross/Blue Shield*, 963 F.2d 1136, 1139 (8th Cir. 1992)). However, there are obvious limits on the extent of an available remedy. In essence, ERISA places a limit on the extent to which an employer can "back-date" the termination of ERISA benefits.

Here the notice which Crane provided on August 8, 2005, could be effective only for any coverage termination on or after June 26, 2005, 44 days before Jennings received the notice. However, the notice was ineffective for all dates prior to June 26, 2005. Consequently, Crane remains obligated to cover Jennings' medical expenses under the ERISA plan which occurred prior to June 26, 2005, less any co-payments and premiums Jennings would have to pay as an employee of Crane. Other courts have imposed a similar remedy where a beneficiary did not receive a timely COBRA notice. See *Starr v. Metro Sys., Inc.*, 461 F.3d 1036 (8th Cir. 2006); *Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196 (10th Cir. 1998); *Hamilton v. Mecca, Inc.*, 930 F.Supp 1540 (S.D. Ga. 1996); *Ward v. Bethenergy Mines, Inc.*, 851 F. Supp. 235 (S.D. W.Va. 1994); *Van Hoove v. Mid-America Bldg. Maint. Inc.*, 841 F.Supp. 1523 (D.Kan. 1993); *Phillips v. Riverside, Inc.*, 796 F.Supp. 403 (E.D. Ark. 1992). The Court finds such a result appropriate here.

### III.

The remedy identified here follows directly from ERISA's notice requirements, which are designed to protect employees from precisely the type of delayed notice which can occur and

which did occur here.  The remedy prevents the unfairness of an employer back-dating a termination as a means of avoiding its obligations to pay for medical costs.  The Court need not determine that Crane had any intent to avoid paying Jennings' medical bills, though its conduct certainly achieved that result.  Indeed, the Court assumes that the delay in notice was inadvertent.

To be sure, Jennings had his COBRA rights, but those rights come at some considerable expense for one without an employment.  This is especially true when the notice is delayed.  A beneficiary who elects to continue coverage under COBRA is often required to pay all premiums due up to the date when he decides to elect coverage.  Failure to pay this amount can result in termination of coverage.  When an employee receives delayed notice, these premium amounts add up for periods of time that the employee did not even know he could have elected COBRA coverage.  Thus when the employee is finally put on notice, the amount he is asked to pay greatly exceeds what he would have had to pay up front if he had been given timely notice.

In any event, ERISA specifically limits an employer's ability to retroactively "claw-back" its medical insurance coverage.  Jennings' remedy here flows directly from his protections under ERISA.  The Court need not resolve any remaining issues as between Crane and MedBen.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants MedBen and Crane's motions to dismiss are DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment is SUSTAINED to the extent that Defendant Crane is responsible for providing medical coverage for Plaintiff under its ERISA plan up to June 26, 2005.

IT IS FURTHER ORDERED that the Court will set a conference to determine whether any further order is necessary prior to making these orders final.

cc: Counsel of Record